UNITED STATES v. ST. JOSEPH STOCKYARDS CO. (four cases).

(District Court, W. D. Missouri, St. Joseph Division.     September, 1909.)

### Nos. 448–451.

1. CARRIERS (§ 211*)—CARRIAGE OF LIVE STOCK—TWENTY-EIGHT HOUR LAW—CARRIERS SUBJECT TO ACT—STOCKYARDS COMPANY.

A stockyards company owning stockyards and doing what is known as a terminal business, having switch tracks encircling its yards and connecting therewith and with trunk line railroads so that all cars of stock in and out of its yards must pass over its tracks, which it alone operates with its own engines and crews, which issues no bills of lading and receives no part of the freight paid the trunk line railroads, but charges a fixed price per car for all cars moved from the connection therewith to its yards or to packing houses, is a railroad company and a common carrier of freight for hire with the rights, duties, and obligations of a common carrier for hire, and subject to the provisions of Twenty-Eight Hour Law June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), where it participates in the carriage of an interstate shipment.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

2. COMMERCE (§ 35*)—CARRIAGE OF LIVE STOCK—TWENTY-EIGHT HOUR LAW.

The transportation of cattle from a point in another state to the chutes at the stockyards at South St. Joseph, Mo., is a continuous shipment, all of which, including the transportation by the stockyards company over its own tracks, is of an interstate character and covered by Twenty-Eight Hour Law June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178).

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 35.*]

3. CARRIERS (§ 219*)—CARRIERS OF LIVE STOCK—TWENTY-EIGHT HOUR LAW—CONSTRUCTION.

Twenty-Eight Hour Law June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), is remedial, its main purpose being to prevent cruelty to the animals shipped, and it cannot be construed as not applicable to a defendant carrier because such carrier did not know how long a connecting carrier from which it received cars of cattle had kept such cattle in confinement without food or water, but it must learn such fact at its peril.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 219.*]

4. CARRIERS (§ 219*)—CARRIERS OF LIVE STOCK—VIOLATION OF TWENTY-EIGHT HOUR LAW—DEFENSES.

That a defendant carrier, after receiving from a connecting carrier cars of cattle which had been confined without food or water beyond the prescribed period, acted promptly in unloading the same, is not a defense to an action to recover the penalty prescribed by Twenty-Eight Hour Law June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), but is in mitigation.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 219.*]

Four actions by the United States against the St. Joseph Stockyards Company. Judgments for plaintiff.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

181 F.—40

Arba S. Van Valkenburgh and Leslie J. Lyons, for the United States.

Brown & Dolman, for defendant.

SMITH McPHERSON, District Judge. In these cases, four in number, Nos. 449 and 450 being consolidated, a jury has been waived, and the cases were submitted on an agreed statement of facts. The cases are brought to recover penalties for confining cattle more than 28 hours without food or water.

Defendant is a Missouri corporation, owning stockyards at South St. Joseph, doing what is known as a terminal business. It owns 22.6 miles of single switch tracks, encircling the stockyards, and connecting therewith, and connecting with the trunk line railroads. So that all live stock in and out from the stockyards must pass over defendant's lines or switches. Over defendant's lines or switches defendant alone moves the cars. For that purpose it has six locomotives with crews of men to operate the same. The trunk line companies deliver and receive the cars at defendant's switches. When the cars are on defendant's switches the trunk line companies have nothing whatever to do with them.

The defendant issues no bills of lading, and receives no part of the freight charges paid to the trunk line companies. The defendant, regardless of weight, commodity, or value of contents of the car, receives $1 for each car moved from the connection of the trunk line to the stockyard or the packing house. The defendant owns all the land on which the stockyards and its switches are located.

One of the shipments in suit illustrates them all. A car of cattle was shipped March 14, 1907, from Wilcox, Neb., to South St. Joseph, Mo. Roy M. Strong was consignor, and Byers Bros. Commission Company, at the stockyards, consignee. The cattle were loaded at Wilcox, Neb., at 5:30 a. m. March 14th and shipped over the Chicago, Burlington & Quincy Railroad, and by that company delivered to defendant at 10:10 a. m. March 15, 1907, and unloaded by defendant at 11:15 a. m., or one hour and five minutes after they were received by defendant, and after a confinement of 29 hours and 45 minutes without food or water. This car was one of a train of 27 cars of live stock, all of which had been on the cars for more than 28 hours without food or water.

No request for extension of time of confinement of the cattle to 36 hours was made. After defendant received the cattle, as stated, it unloaded them in one hour and five minutes, which was as quickly as could be done, as they had to be weighed before being unloaded. When defendant received the cattle, as of course the Burlington Company knew how long the cattle had been in the car without food or water. The defendant company did not know; and there is no evidence that defendant company sought to learn such fact.

Without discussing them, these facts lead the court to the following conclusions:

1. Defendant is a railroad company. As such it is a common carrier of freight for hire, with the rights and privileges, duties and obligations of a common carrier of freight for hire.

2. The transportation of the cattle from Wilcox, Neb., to the chutes

at the stockyards at South St. Joseph, Mo., was a continuous shipment, all of which, including the transportation by the defendant over its tracks, was of an interstate character, and all of which was covered by the statute forbidding such confinement more than 28 hours in the absence of the written request to carry them for 36 hours.

3. The purpose of the statute is remedial, and for humane purposes. One purpose is to prevent the slaughtering of animals for food when in a feverish condition brought about by long confinement without food, water, and rest. But the main purpose is to prevent cruelty to animals shipped. These being so, the statute cannot be construed of no application, because the defendant, the connecting carrier, did not know how long the Burlington Company had the cattle in confinement without food or water. The connecting carrier must learn such fact at its peril. This conclusion is not changed, but it is emphasized, by the fact that the defendant did not seek to ascertain such fact.

4. After the defendant received the cattle, as covered by all the actions now before the court, it acted promptly and quickly. But that is not defensive; but such action is in mitigation.

5. The penalty will be imposed in each of the three cases of $100.