UNITED STATES v. LEHIGH VALLEY R. CO. (three cases).

(Circuit Court, W. D. New York. January 9, 1911.)

1. CARRIERS (§ 211*)—TRANSPORTATION OF LIVE STOCK—28-HOUR LAW—APPLICATION—CARRIAGE FROM ONE STATE TO ANOTHER THROUGH FOREIGN COUNTRY.

Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), prohibiting interstate carriers from confining animals transported in interstate commerce for more than 28 or 36 hours without unloading them for feed, water, and rest, applies to shipments passing from one state through a foreign country (Canada) to another state.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

2. CARRIERS (§ 211*) — TRANSPORTATION OF ANIMALS — 28-HOUR LAW — CONSTRUCTION—CONNECTING CARRIERS.

Under the 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1909, p. 1178]), prohibiting interstate carriers in transportation of animals from retaining them in the cars for a longer period than 28 or 36 hours without unloading them for food, water, and rest, where animals have been confined for the entire statutory period before being delivered to a connecting carrier, it is not necessary that a new period equal to the statutory time must again expire before the connecting carrier can be held guilty of violating the act; the liability being complete on the connecting carrier continuing the transportation toward the destination except to transport them to the yards at the junction point to unload them, under the provision that, in estimating the confinement, the time consumed in loading and unloading shall not be considered, but the time during which they have been confined on connecting roads is to be included.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

3. CARRIERS (§ 211*) — TRANSPORTATION OF ANIMALS — 28-HOUR LAW — CONSTRUCTION—EXTRATERRITORIAL OPERATION.

The 28-hour law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. 1909, p. 1178]), prohibiting interstate carriers from confining animals in cars more than 28 or 36 hours without unloading them for food, water, and rest, though construed to apply to interstate shipments from one state to another through a foreign country, is not objectionable as extraterritorial in operation, since the offense is complete by continued confinement only after the statutory time has expired; it being immaterial that a part of the time has been consumed by transportation in a foreign country.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 211.*]

Actions by the United States against the Lehigh Valley Railroad Company (three cases), against the New York Central & Hudson River Railroad Company, against the Michigan Central Railroad Company, and against the Grand Trunk Railway Company of Canada, to recover penalties for violation of the 28-hour law. Judgment for plaintiff in each case.

John Lord O'Brian, U. S. Atty.

Kenefick, Cooke, Mitchell & Bass (James McCormick Mitchell, of counsel), for defendant Lehigh Valley Railroad Company.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hoyt & Spratt (Alfred L. Becker, of counsel), for defendants New York Central & Hudson River R. Co. and Michigan Central R. Co.

Moot, Sprague, Brownell & Marcy, for defendant Grand Trunk Railway Co.

HOLT, District Judge. These cases are brought to recover penalties under Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), to prevent cruelty to animals while in transit by railroad, commonly called the "28-hour law."

In each of these cases cattle were shipped in cars from places in the state of Illinois or Michigan to Detroit, thence through Canada to Niagara Falls, and thence to places in the state of New York. In each case the cattle were confined in the cars more than 36 hours without being fed or watered or unloaded for rest, in violation of the statute. In some of these cases formal demurrers have been filed, and in the other cases it has been stipulated that they be deemed brought to trial, and motions made to dismiss the complaint.

All these cases have been argued together, and in them two defenses are urged. One is that the 28-hour law does not apply to a shipment of cattle which passes from one state through a foreign country to another state. In some of the cases the claim is also made that, the statutory period of confinement having expired before the cattle came into the defendants' possession, no liability under the act could be imposed upon them until an additional 28 or 36 hours had passed.

The claim that the 28-hour law does not apply to the case of a shipment of cattle through any foreign country is based upon the language of the act, which makes it an offense for any railroad company, transporting cattle or other animals from one state into or through another state, to confine them in cars for a period longer than 28 consecutive hours, without unloading them for water, feeding, and rest, for a period of at least five consecutive hours, with the provision that under certain circumstances 36 hours should be the limit of time. In short, the claim is that the words in the statute "from one state into another state" cannot properly be held to include transportation from one state through a foreign jurisdiction into another state. It is claimed that Congress might have made the provisions of this statute applicable to foreign commerce, for example, that the act by its terms might have been made expressly applicable (1) to shipments originating in Canada and passing into and terminating in one of the United States; (2) to shipments originating in Canada, passing into the United States, and terminating in Canada; (3) to shipments originating in the United States, passing into Canada, and terminating in the United States. The defendants claim that the act clearly does not apply to either of such cases, and that Congress intended not to legislate in respect to such cases, in view of the fact that Canada has a law for the prevention of cruelty to animals, and international complications might result from an attempt by the United States to deal with the question of such shipments. It is argued that, as the law is well settled that transportation which originates and terminates in one

state nevertheless constitutes interstate commerce if it passes in transit, at any point, beyond the boundaries of said state (Hanley v. Kansas City Southern Ry. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333), it follows that, when transportation passes beyond the boundaries of a single state into a foreign country and then terminates in the United States, it becomes foreign commerce, and that the 28-hour law does not assume to regulate foreign commerce, but only commerce between the several states.

The defendants' counsel, in support of this contention, also refers to the fact that several acts of Congress, dealing with questions arising under the commerce clause of the Constitution, expressly provide for such a case. Thus, the first section of the act to regulate commerce, of 1887, provides that the provisions of that act shall apply to any common carrier engaged in the transportation of passengers or property "from one state or territory of the United States, or the District of Columbia, to any other state or territory of the United States, or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States, * * * or shipped from a foreign country to any place in the United States." Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154). The arbitration act, approved June 1, 1898, provides that the provisions of that act shall apply to any common carrier engaged in the transportation of passengers or property from one state to any other state, "or from any place in the United States through a foreign country to any other place in the United States." Act June 1, 1898, c. 370, 30 Stat. 424 (U. S. Comp. St. 1901, p. 3205). There is a similar provision in the hours of service law, approved March 4, 1907 (chapter 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1909, p. 1170]).

Undoubtedly, if the 28-hour law had contained such a provision as is contained in the other statutes referred to, and had expressly provided that it should apply to the case of the transportation of cattle from any place in the United States through a foreign country to any other place in the United States, that would have been decisive of the question raised in this case; but I cannot think that the mere omission of that expression in the act justifies the inference that Congress did not intend to have the 28-hour law apply to such a case. These shipments of cattle came within the literal provisions of the law. They were shipments from one state into another state. The fact that, in the course of such shipment, they passed through the Dominion of Canada, did not alter the fact that the shipments were from places in the state of Illinois or Michigan to places in the state of New York. The railway routes from Detroit to Niagara Falls, through the Province of Ontario, form parts of great standard railroad lines from Chicago and the West to New York. Congress concededly had the power to regulate shipments over such a line. The object of the act was obviously to prevent cruelty to animals, to protect the property of shippers, and to prevent injury to the public health from the sale for food of cattle made ill

and feverish by hunger, thirst, and exhaustion. I cannot believe that Congress intended to impose a penalty for such cruelty to animals on a line from Chicago to New York, which passes entirely through the United States, and not impose any penalty for similar cruelty on another line from Chicago to New York which between Detroit and Niagara Falls passes through Canada. If such a distinction be recognized, it will be possible for the shippers, and the railroads themselves, to avoid all liability under the act, in transporting cattle from Chicago to New York, by shipping them all by the routes which pass through Canada.

It may be that the omission of any provision in the 28-hour law for the punishment of cruelty to animals shipped from Canada into the United States was intentional. Congress may have taken into consideration the fact that Canada has a similar law, and may have intended to avoid any international complications which might arise in such cases. But I cannot think that Congress intended to exempt from the operations of the act such shipments between points in the Western and Eastern states as, during a part of the trip, happen to pass through Canada, especially in view of the fact that cattle upon such routes are usually taken through in sealed cars, bonded under the customs laws. Such a shipment is in fact from a state to a state. The provisions in the other acts cited, specifically providing for the case of a shipment from a state through a foreign country to another state, may be considered as having been inserted in those acts from excessive caution. In my opinion, its omission from the 28-hour act does not necessarily imply that such a shipment does not come within the provisions of the act.

In some of these cases, the period of 28 hours, during which the animals were confined without food or water or being unloaded for rest, expired before the delivery of the cattle by the connecting road to the defendant, and it is claimed in those cases that, the statutory penalty having been incurred while the cattle were in the possession of the connecting line, no new penalty can be imposed upon the defendant until an additional period of 28 hours after the delivery of the cattle to the defendant had passed. This view of the operation of the act has been taken by Judge Reed, in the Circuit Court of Iowa, in United States v. Sioux City Stock Yards Co., 162 Fed. 556, 561, and by Judge Willard, in the Circuit Court of Minnesota, in United States v. Stockyards Terminal Co., 172 Fed. 452. The latter case, upon appeal to the Circuit Court of Appeals for the Eighth Circuit, was affirmed (178 Fed. 19); but the ground upon which the affirmance was put by Judge Riner, who wrote the opinion of the majority, was that the proof showed that the defendant did not know that the cattle had been confined without unloading for a period in excess of 28 hours before it received them, and that therefore it had not knowingly and willfully violated the act. Judge Sanborn, who concurred in the decision, also held that the defendant was not guilty of any offense, on the ground that one offense had already been committed before the defendant received the cattle, and that it could not "commit a second offense by prolonging the confinement of the cattle over the 36 hours unless they

confined them 28 hours more." An exactly contrary view is taken by Judge Hazel, in United States v. N. Y. C. & H. R. R. Co. (C. C.) 156 Fed. 249; by Judge McPherson, in United States v. St. Joseph Stockyards Co. (D. C.) 181 Fed. 625; and by Judge Wolverton, in United States v. Northern Pacific Terminal Co. (C. C.) 181 Fed. 879.

These are all decisions by courts of first instance, except the decision by the Circuit Court of Appeals for the Eighth Circuit in United States v. Stock Yards Terminal Ry. Co., 178 Fed. 19, and in that case the majority of the court affirmed the judgment on the ground that there was no proof that the defendant had knowingly and willfully violated the act, and expressed no opinion on the question whether, one penalty having been incurred by the connecting carrier, the defendant could incur another penalty until the additional 28 hours of confinement had passed. In this condition of conflicting authority, I think that it is obviously my duty to decide the question according to my own convictions. With the highest respect for the eminent judges expressing the contrary opinion, I think that any railroad company which takes from a connecting road cattle that have been confined without food, water, or unloading more than 28 or 36 hours, as the case may be, and which knowingly and willfully continues to transport them, immediately incurs a new penalty. The act in terms expressly provides that:

"In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours."

The thing intended to be prevented by this legislation was cruelty to the animals, and, as the act expressly provides that the time during which the animals have been confined on connecting roads shall be included, I think that the act clearly makes it the duty of any railroad receiving animals, knowing them to have been confined longer than the statutory term, to unload, water, and feed them, and give them time to rest. The counsel for the defendant urged that, if this view be taken, the mere receipt of such animals immediately imposes a liability upon the receiving road; that, as the term of confinement has been already exceeded, a further confinement for an instant makes the receiving road liable. But the act should be reasonably construed. It provides that, in estimating such confinement, the time consumed in loading and unloading shall not be considered, and therefore, if a road receiving animals which have been confined longer than the statutory period proceeds with reasonable speed to unload, water, and feed them, in my opinion no penalty will be incurred. The fact that it may be necessary to move the cars containing them a short distance to the yards would not necessarily involve a penalty. The question would be: Is the movement substantially a part of the process of unloading, or is it a continuance of transportation? If this construction of the act makes it necessary for railroads engaging in the transportation of cattle to provide suitable yards at which cattle can be unloaded, at the point where the roads connect with other roads, that must be

done. Such a requirement seems to me entirely reasonable, in view of the very large number of cattle shipped over long distances in this country, and the possibility of their suffering great cruelties during such transportation.

It is urged in behalf of the defendants that, if the time occupied in the transportation of the cattle through Canada is included in computing the period of detention, the effect will be to give to this law an extraterritorial force. The general rule is, of course, fundamental that the penal laws of one country have no force in another country. But, in my opinion, that rule has no application in these cases. The offense with which these defendants are charged is continuing the confinement of the cattle in this state after the term of confinement permitted by the statute has expired. It is, of course, true that their confinement in New York would not have constituted an offense without their previous confinement, part of which was in Canada; but the previous confinement in Canada or elsewhere is not a part of the offense, although a fact necessary to its existence. There are various cases in which the question whether an act constitutes a crime depends upon the question whether certain previous acts have occurred. Take, for instance, the crime of receiving stolen property. The property must have been stolen; but the crime consists in receiving it, knowing it to have been stolen. It is immaterial where the theft took place. It would be no defense to prove that it took place in another state or country; nor would the punishment of a man convicted in such a case violate the rule that criminal statutes have no extraterritorial force. Suppose a man were prosecuted criminally for cruelty to a horse by working the horse with a galled back. Would it be a defense to prove that the horse's back became galled originally while working in a foreign country? This case seems to me in principle the same as those at bar.

My conclusion is that there should be judgment for the United States in each of these cases. In the three cases against the Lehigh Valley Railroad Company the demurrers are overruled, with leave to answer within 20 days upon payment of costs. In the cases against the New York Central & Hudson River Railroad Company and the Grand Trunk Railway Company of Canada, the motions to dismiss the complaint are denied. In the case against the Michigan Central Railroad Company, which is submitted for final judgment on proofs taken, the evidence shows a case of serious cruelty. Twenty-three horses were confined in a car for a period of over 40 hours, without food, water, or rest, in extremely cold weather, with the result that one of the horses died, and all suffered severely. I think that there should be judgment for the plaintiff for $500, the extreme penalty provided in the act.