## GRAND TRUNK RY. CO. OF CANADA v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.    November 13, 1911.)

### No. 60.

CARRIERS (§ 37*)—CARRIAGE OF LIVE STOCK—28-HOUR LAW—CONSTRUCTION—CARRIAGE THROUGH FOREIGN COUNTRY.

Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), prohibiting interstate carriers of live stock from confining the same in cars for a period longer than 28 consecutive hours without unloading for rest, water, and feeding, is applicable to a shipment originating in one state and ending in another, when confinement for more than the statutory period is shown, even though part of such period elapsed while the animals were in a foreign country.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*

Liability of carrier for failure to feed, water, and rest live stock, and for violation of 28-hour law, see note to St. Joseph Stockyards Co. v. United States, 110 C. C. A. 435.]

In Error to the Circuit Court of the United States for the Western District of New York.

Action by the United States against the Grand Trunk Railway Company of Canada. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 184 Fed. 971.

On writ of error to review a judgment against the Grand Trunk Railway for $532.91, being the amount of a fine of $500 and costs. The fine was imposed by the court after the jury had rendered a verdict in favor of the United States, finding the defendant guilty of a violation of the so-called "Twenty-Eight Hour Law." Act June 29, 1906, c. 3594, 34 Stat. pt. 1, p. 607 (U. S. Comp. St. Supp. 1909, p. 1178).

Moot, Sprague, Brownell & Marcy (John W. Ryan, of counsel), for plaintiff in error.

John Lord O'Brian, U. S. Atty.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The law under which this action was brought provides, in so far as it is applicable to the present issue: That no railroad whose road forms any part of a line of road over which cattle, sheep, swine or other animals shall be conveyed from one state or territory into or through another state or territory, shall confine the same in cars for a period of longer than twenty-eight consecutive hours without unloading the same, in a humane manner, into properly equipped pens for rest, water and feeding, for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight. The statute further provides:

"In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

confined without rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their continuous confinement beyond the period of twenty-eight hours except upon the contingencies hereinbefore stated."

The sheep and calves involved in the present controversy were loaded into a car of the Pere Marquette Railroad at Palms, Mich., on the 24th of February, 1908, at 11 o'clock in the forenoon. At 3 o'clock in the morning of the next day they arrived at Port Huron, Mich., and were there delivered to the defendant. The sheep and calves were in a compartment in the same car with cattle, the latter being unloaded at Port Huron, but there was no attempt to unload the former. From Port Huron, the defendant transported them through Canada to Black Rock, N. Y., where it delivered them to the New York Central Railroad Company at 12:01 o'clock on February 26th. They were confined without being unloaded for 49 hours and 1 minute.

When they reached Port Huron, Mich., and were transferred to the defendant, they had already been 16 hours en route without food, rest or water. This fact was known to the defendant. That the sheep and calves could have been unloaded at Port Huron is demonstrated by the fact that the cattle, confined in another section of the same car, were unloaded, fed and rested. No valid reason is given for the neglect of the sheep and calves. From Port Huron they were transported through Canada and landed at Black Rock, after being confined without food, rest or water for 49 consecutive hours. This fact was found by the jury. The defendant knew when it received the sheep and calves that they had been carried 16 hours without food, water or rest; and that it would have to carry them for over 30 additional hours over its own lines before they reached their destination.

It is unnecessary to discuss the evidence bearing upon the contention that the unloading at Port Huron was prevented by a storm and that the testimony fails to show that the animals were not fed and watered at Port Huron. These were questions of fact and were settled in favor of the United States by the jury. Their finding, which was in writing, is as follows:

"We find that the sheep and calves in question were transported from Palms, in the state of Michigan, to Port Huron, and thence by the defendant, the Grand Trunk Railway Company, over the line through Canada into the state of New York, and that such animals were knowingly and willfully confined in transportation for a period longer than 28 consecutive hours, without unloading the same for rest, water and feed, for at least 5 consecutive hours, and that the defendant was not prevented from doing so by storm or any of the causes specified in the act."

The proposition that the act is inapplicable to a shipment from one state through Canada to another state is not relied on by the defendant, in view of the decision of this court to the contrary in the case of United States v. Lehigh Valley Railroad Company, 184 Fed. 971.

The only remaining question is whether the court erred in refusing to charge the jury "that no violation of the provisions of this law

on the part of the defendant occurred while the cattle were in transportation through Canada." The defendant contends that there is no evidence to show that it violated the law in the United States and that its action in confining the animals for a longer period than 28 hours in Canada should not be considered. This contention cannot be maintained. When the defendant brought the animals into the United States they had been for 49 hours without food, water or rest, in violation of the statute. When the car entered the United States, the acts forbidden by the law had been committed, and this situation was continued by the defendant for the period of an hour. In other words, the defendant violated the law and continued the violation while in the United States.

We think the logical conclusion from our decision in the Lehigh Valley Case is that the law is applicable to a shipment originating in one state and ending in another, when the deprivation of food, water and rest for the statutory period is shown, even though part of such period elapsed while the animals were in a foreign country.

The refusal to charge as requested was not error. Had the charge been made, it might have misled the jury, although if the facts had been that the defendant had parted with the possession of the animals in Canada, the proposed charge might have been correct. The difficulty is that the defendant, after having neglected the animals for a period largely in excess of the time fixed by the statute, brought them back into the United States and continued to neglect them here.

We are satisfied that the trial court correctly interpreted the statute and that to hold otherwise would be to enable all railroads running through the province of Canada from the west to the east, and vice versa, to evade the law with impunity.

The judgment is affirmed, with costs.