UNITED STATES v. DELAWARE, L. & W. R. CO.

(District Court, N. D. New York. July 8, 1913.)

CARRIERS (§ 37*)—INTERSTATE CARRIAGE OF LIVE STOCK—28-HOUR LAW—PENALTIES.

A railroad company which receives cars of cattle in interstate commerce from a connecting carrier with knowledge that they have already been confined continuously for more than 28 hours in violation of Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178), is not subject to the penalty imposed by such act, provided it has pens convenient to the place where it receives the cattle, and without unnecessary delay moves them to such pens and unloads them for rest, feed, and water; but it is its duty to move them at once, and if there is any delay it has the burden of excusing it by showing storm, accident, or some unavoidable cause, which could not have been anticipated or avoided by the exercise of due diligence and foresight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

Action by the United States against the Delaware, Lackawanna & Western Railroad Company. Judgment for plaintiff.

Suit to recover a penalty of $500 for neglecting to unload, feed, and water cattle delivered to the Lake Shore & Michigan Southern Railroad Company for transportation and by that company turned over in the car containing them to the defendant, the Delaware, Lackawanna & Western Railroad Company. The facts are agreed upon and a jury trial waived.

George B. Curtiss, U. S. Atty., of Binghamton, N. Y. (Thomas H. Dowd, Asst. U. S. Atty., of Cortland, N. Y., of counsel).

F. W. Thomson and W. S. Jenney, both of New York City, for defendant.

RAY, District Judge. The agreed facts are as follows:

"First. That a car loaded with 19 head of cattle and 4 head of calves, consigned to the order of L. Newhoff, at the city of Albany, by a consignor named C. E. Nixon, of Chicago, was delivered by the Lake Shore & Michigan Southern Railroad Company on December 14, 1910, to the Delaware, Lackawanna & Western Railroad Company, the defendant, at Buffalo, N. Y.

"Second. That said car was delivered as aforesaid and was received by the defendant upon a side track, which is called an interchange track, and which is a track set aside for the common use of both said railroad companies to accomplish the interchange of through traffic.

"Third. That said car was delivered as aforesaid, to defendant at 3:20 o'clock on the afternoon of December 14, 1910.

"Fourth. That in making said delivery as aforesaid, the Lake Shore & Michigan Southern Railroad Company also delivered to the defendant a waybill showing the destination, route, etc., of said car, and also showing by a statement indorsed thereon that said cattle had been 'fed, watered and loaded at 1:30 o'clock in the forenoon of December 13, 1910.'

"Fifth. That at the time defendant received said car as aforesaid, the said cattle had been confined already by the Lake Shore & Michigan Southern Railroad Company without food and water and without unloading for rest in violation of law, for a period of 37 hours and 50 minutes.

"Sixth. That the cattle in said car were subject to the 36-hour period un-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

der the said law, and the Lake Shore & Michigan Southern Railroad Company had exceeded said period by one hour and 50 minutes.

"Seventh. That when delivery of said car was tendered to the defendant by its said connecting carrier upon said interchange track, under the conditions as aforesaid, there were but two courses for the defendant to follow. One course was to refuse to accept the said car, which would have compelled its connecting carrier to haul said car back on its own line to its nearest stockyard for unloading said cattle; and the other course was to accept the car and assume the duty of hauling said car with reasonable promptness to its own nearest stockyard for unloading.

"Eighth. That the defendant accepted the car and thereby accepted whatever responsibilities and duties in relation thereto which under the conditions then present were placed upon defendant by the federal statute regulating the transportation of live stock.

"Ninth. That said car was delivered to defendant at 3:20 o'clock on the afternoon of December 14, 1910, by the Lake Shore & Michigan Southern Railroad Company at the interchange track in Buffalo, and defendant took said car from said interchange track at 4:30 o'clock in the afternoon of December 14, 1910, and took it to East Buffalo Stockyard, defendant's nearest facility for unloading, where the cattle were unloaded for food, water, and rest at 8:00 o'clock p. m. of December 14, 1910.

"Tenth. That between the time of the delivery of said car to defendant by its connecting carrier and the time when defendant unloaded the cattle as aforesaid, 4 hours and 40 minutes elapsed.

"Eleventh. That the haul from the interchange tracks to the stockyards was a terminal movement.

"Twelfth. That defendant did not carry the car from the interchange track in any main line movement towards destination prior to unloading.

"Thirteenth. That the actual running time of the car from Buffalo to East Buffalo, exclusive of the necessary drilling movements, was one hour.

"Fourteenth. That no penalty has been collected from the Lake Shore & Michigan Southern Railroad Company on account of its handling of said car and no action for such purpose has been commenced."

The defendant claims that under these facts the only question for the court is: "Did the Delaware, Lackawanna & Western Railroad Company violate the statute in keeping the cattle confined for 4 hours and 40 minutes under the circumstances and conditions," without rest, food, or water?

The provisions of the act of Congress alleged to have been violated by the defendant corporation and under which this action was sought are very plain, as is the purpose of the law. The main purpose is to prevent cruelty to animals, and the act so declares on its face. The animals are to be unloaded in a humane manner into properly equipped pens for rest, water, and feeding, for a period of at least five consecutive hours after having been confined in a car, boat, or vessel of any description in interstate shipment for 28 consecutive hours, unless such unloading is prevented by storm, or other accidental or unavoidable causes, which cannot be anticipated or avoided by the exercise of due diligence and foresight. The act in words says:

"In estimating such confinement the time consumed in loading and unloading shall not be considered (as part of the 28 hours meaning) but the time during which the animals have been confined without such rest, or food, or water *on connecting roads shall be included* (in making up the 28 hours meaning) it being the intent of this act to prohibit their *continuous confinement beyond the period of twenty-eight hours*, except upon the contingencies hereinbefore stated." Act of June 29, 1906, c. 3594, § 1, 34 Stat. 607 (U. S. Comp. St. Supp. 1909, p. 1178).

By section 3 of the act it is provided that the neglect or failure must be knowingly and willfully done and the penalty is not less than $100 and not more than $500. If transported in cars, boats, or other vessels, where such animals can and do have the necessary rest, food, water, and space and opportunity to rest, then the provision in regard to unloading does not apply.

It is no excuse to a defendant, which knowingly and willfully fails to comply with the provisions of the act, that the loading took place on a *connecting road* and that such road had already kept the animals in confinement without rest, food, and water beyond the 28-hour period when the car came to the hands of the other company. That is, if the corporation *receiving* the cattle from a connecting line receives same with knowledge that such connecting company had already offended against the law with respect to such cattle, it does not thereby and from that fact alone become responsible for the offending of the connecting corporation; but, if it, the receiving company, then continues such confinement without unloading for rest, water, and food, and is not prevented from so unloading by storm, or other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight, it becomes liable to the penalty, even if such detention of such cattle without unloading is but for an hour. The provision is that:

"No railroad * * * whose road forms any part of a line of road over which cattle, sheep, swine or other animals *shall be conveyed* * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours * * * unless prevented by storm. * * * In estimating such confinement * * * the time during which the animals have been confined without such rest or food or water on connecting roads shall be included," etc.

When the corporation receives such a car of cattle from the connecting company for transportation knowing the cattle have already been confined for or beyond the 28-hour period, it is its duty *at once* to unload for rest, food, and water. It may, of course, run the cars to its pens for unloading, but must do so without unnecessary delay. It is its duty, if engaged in interstate transportation, to have pens and have them at a point convenient to the place where it receives cars.

Can it be that if one railroad corporation receives within a few rods of its pens a car load of cattle from another railroad corporation connecting with it, which cattle have been confined (without excuse) more than 28 consecutive hours and *immediately* moves the car to its pens on its own rails, such pens being reasonably near, and then *immediately* unloads, as the statute requires, that it is liable to a penalty for so receiving and unloading such cattle? In such case the receiving corporation has not confined such cattle at all within the meaning of the act; it has simply received and unloaded properly for rest, food, and water, and the 28-hour law cannot properly be so strictly and unreasonably construed as to make the receiving corporation liable to a penalty for so doing. The wrongful act which subjects a railroad to the penalty commences when the cattle have been kept in confinement beyond the 28-hour period, but the time necessarily occupied in unloading is no part of the time reckoned. Keeping the animals confined after

the 28-hour period has expired without legal excuse is an offense under this law. Such illegal confinement is a continuing act, and all connecting corporations *participating in such act of illegal confinement* become liable to the penalty but not otherwise. To receive and promptly unload cannot be deemed an unlawful act.

The defendant corporation was informed when it received this car of cattle that the animals had already been confined more than the statutory period. See fourth statement of fact. It then became its duty to proceed promptly to place said car for unloading and unload said cattle for the purposes mentioned. The car was delivered to the defendant at 3:20 o'clock p. m. December 14, 1910, at the interchange track in Buffalo, N. Y., and was removed from said track by the defendant at 4:30 o'clock p. m. of the same day and taken to the East Buffalo Stockyard and unloaded at 8 o'clock p. m. of the same day, 4 hours and 40 minutes after its receipt. Was there a prompt and an efficient handling of this car? In other words, was the defendant corporation from 3:20 o'clock p. m. to 8 o'clock p. m., a period of 4 hours and 40 minutes, with due and reasonable diligence under such circumstances and in view of the car and its contents and the fact that the cattle had already been confined over 37 hours when defendant received them, proceeding to place the car so as to unload same?

The distance from defendant's East Buffalo Stockyard to the point where defendant received the car is not given, but the running time required is stated to be one hour. It is stipulated that the haul from the one point to the other was a terminal movement, and that the car was not carried in any main line movement towards its destination prior to unloading. It appears that this car of cattle was in defendant's possession 3 hours and 50 minutes before the unloading commenced over and above the time required to run it from the point where received from the connecting road to the point of unloading, and what was done with the car during that time does not appear. So far as appears there was no storm, no accident, nothing intervening to prevent the delivery of the car at the unloading point in say one hour and 50 minutes. In short, allowing 50 minutes for necessary switching operations and probable delays caused by the movement of other cars and one hour for the main movement from the receiving point to the unloading point, and *three hours' detention are wholly unaccounted for.* It is not made to appear that even 40 minutes were required for switching movements. When a connecting railroad company receives a car of cattle in interstate commerce or movement knowing that the cattle have already been confined without rest, food, or water for more than the statutory time, and such cattle are not promptly unloaded by such receiving company, and prima facie the delay in unloading appears unreasonable and unnecessary, the burden is on such receiving company to excuse the delay by showing storm, accident, or some unavoidable cause which could not have been anticipated or avoided by the exercise of due diligence and foresight. The car is in the possession of the railroad company and subject to its control, and such company, and it alone, knows and controls its movements and the conditions surrounding and controlling them, and it is only fair and just that it should ac-

count therefor and for delays. There *may be* an unforseen congestion, a break in the rails, the breaking down of an engine engaged in moving the particular car or others that block its way, etc.; but under this statute the court will not presume that the delay was the result of accident or unavoidable causes which could not be avoided by the exercise of due diligence and foresight, and the language of the statute plainly imposes this burden of proof on the defendant.

I think this is the tenor of the decisions and the plain import of the language of the statute. The decision in United States v. Stockyards Terminal Co. (C. C.) 172 Fed. 452, may be good law; but I cannot now assent to it. United States v. St. Joseph Stockyards Co. (D. C.) 181 Fed. 625, may be good law; but I cannot assent to it. Is it possible that the mere act of receiving cattle kept in confinement more than 28 hours and promptly unloading them for rest, food, and water, shows participation in the illegal confinement of such cattle? Not unless unloading and liberating the cattle is confining them. To my mind it would be as just to hold that the jailer who conducts a prisoner maliciously arrested by a third person to the door of the jail for the purpose of letting him out is equally liable with the one who maliciously caused the prisoner to be arrested and incarcerated. The act in question shows on its face that the main purpose of its enactment was to *prevent* cruelty to animals shipped, not *aggravate and continue* the cruelty by subjecting a corporation who receives and promptly releases and feeds and waters the animals so confined to a penalty. Indeed, on further search I find that United States v. St. Joseph Stockyards Co. (D. C.) 181 Fed. 625, was reversed in St. Joseph Stockyards Co. v. United States, 187 Fed. 104, 110 C. C. A. 432. I also find that the views above expressed by me are in accord with those of Judge Holt expressed in United States v. Lehigh Valley R. Co. (C. C.) 184 Fed. 971, 975 (affirmed 187 Fed. 1006, 109 C. C. A. 211). Judge Holt said:

"The thing intended to be prevented by this legislation was cruelty to the animals, and, as the act expressly provides that the time during which the animals have been confined on connecting roads shall be included, I think that the act clearly makes it the duty of any railroad receiving animals, knowing them to have been confined longer than the statutory term, to unload, water, and feed them, and give them time to rest. The counsel for the defendant urged that, if this view be taken, the mere receipt of such animals immediately imposes a liability upon the receiving road; that, as the term of confinement has been already exceeded, a further confinement for an instant makes the receiving road liable. But the act should be reasonably construed. It provides that, in estimating such confinement, the time consumed in loading and unloading shall not be considered, and therefore, if a road receiving animals which have been confined longer than the statutory period proceeds with reasonable speed to unload, water, and feed them, in my opinion no penalty will be incurred. The fact that it may be necessary to move the cars containing them a short distance to the yards would not necessarily involve a penalty. The question would be: Is the movement substantially a part of the process of unloading, or is it a continuance of transportation? If this construction of the act makes it necessary for railroads engaging in the transportation of cattle to provide suitable yards at which cattle can be unloaded, at the point where the roads connect with other roads, that must be done. Such a requirement seems to me entirely reasonable, in view of the very large number of cattle shipped over long distances in this country, and the possibility of their suffering great cruelties during such transportation."

I do not think Judge Holt intended to hold that in order to incur the penalty the receiving road must actually do some act to carry the animals forward on their journey towards the final destination. If we adopt such a construction, the receiving railroad may take its time and serve its convenience in switching and unloading, so long as it does not move the car forward on its journey at all, and thus defeat the purpose of the law in many cases.

I find nothing in this case showing a purpose on the part of the defendant corporation to violate the law or evade it. I think the neglect in moving and unloading this car was knowingly and willfully done within the meaning of the law; that is, the defendant through its servants and employés was negligent and knew it and appreciated it and willfully failed to move the car more rapidly to serve their own convenience. I do not think the officers of this road approve, or will approve, or sanction such negligence on the part of their employés, but, on the contrary, will do their best, as is their duty, to see that cars containing animals are promptly moved and unloaded even at great inconvenience. The prompt movement of cars containing ordinary freight must be subordinated to the movement of cars containing live stock when necessary, and railroad corporations and their employés should understand this and act accordingly.

Entertaining this view, I think a penalty of $200 in this case will be sufficient, and a judgment is directed accordingly.