## UNITED STATES v. NEW YORK CENT. & H. R. R. CO.

### (District Court, N. D. New York. April 1, 1915.)

1. CARRIERS ⊙⟶20 — CONFINEMENT OF LIVE STOCK — PENALTIES — STATUTORY PROVISIONS.

Under Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, §§ 8651–8654), forbidding interstate carriers to confine cattle or other animals in cars for longer than 28 consecutive hours (or 36 hours with the consent of the owner) without unloading them for rest, water, and feeding for a period of at least 5 consecutive hours, where defendant unloaded a shipment of cattle, but reloaded them 3 hours later, and transported and delivered them to a connecting carrier more than 36 hours from the time of loading at the point of shipment, they not having been unloaded for 5 hours in the meantime, and the connecting carrier, without unloading them, transported them to their destination, defendant and the connecting carrier were guilty of separate violations of the act, and liable for separate penalties, though the time of confinement constituting the two violations overlapped, and a verdict and judgment against the connecting carrier, and payment thereof, did not exonerate defendant from its liability for its violation, or entitle it to a vacation of the judgment against it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. ⊙⟶20.]

2. JUDGMENT ⊙⟶631—JOINT TORT-FEASORS—SINGLE RECOVERY.

When two or more persons unite in the commission of a tort, they may be sued together, and one penalty will be imposed, and there will be but one collection; and when they are sued separately, there may be a judgment in each case, and a collection of costs in each case, but only one recovery or collection of damages or penalty.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1064, 1088, 1147; Dec. Dig. ⊙⟶631.]

Action for a penalty by the United States against the New York Central & Hudson River Railroad Company. On application to vacate a judgment against defendant. Application denied.

This is an application to vacate a judgment entered against the defendant for a penalty imposed for a violation of the Twenty-Eight Hour Law, on the ground that for the same violation a judgment for a penalty had been recovered against the Lake Shore & Michigan Southern Railway Company, a connecting carrier, and paid.

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John H. Gleason, U. S. Atty., of Albany, N. Y., for the United States.

Visscher, Whalen & Austin, of Albany, N. Y., for defendant.

RAY, District Judge. [1] September 24, 1910, at 12 o'clock noon, Elmer Boatright, as consignor, shipped from Woodstock, Vt., to R. L. Farrer, at London, Ohio, as consignee, in New York Central & Hudson River Railroad car No. 23078, 29 cows and 3 calves over the line of Woodstock & Vermont Railroad Company and connecting lines, viz., to White River Junction over said Woodstock & Vermont Railroad, thence over the line of Boston & Maine Railroad to Rotterdam Junction, N. Y., thence over line of New York Central & Hudson River Railroad Company, the defendant, to West Seneca, N. Y., and thence to stockyards at Cleveland, Ohio, over line of the Lake Shore & Michigan Southern Railroad Company, and thence to London, Ohio, by way of Tyndall, over the line of the Cleveland, Chicago & St. Louis Railway Company. These are connecting lines. These cattle in the car, having been turned over to the defendant, were unloaded at Rotterdam Junction, N. Y., for rest, food, and water at about 4 o'clock p. m. September 25, 1910, and were given rest, food, and water *for 3 hours only,* when, at the request of the consignor, they were reloaded at 7 o'clock p.m. and transported to West Seneca, N. Y., where the car of cattle was turned over to the connecting carrier, Lake Shore & Michigan Southern Railway Company, and was transported by it to Cleveland, Ohio, where the cattle were unloaded and given rest, food, and water at 10:30 a. m., September 27, 1910, and not before. They were not unloaded at West Seneca, or any point between Rotterdam Junction and Cleveland.

The car was delivered to the Lake Shore & Michigan Southern Railway Company before the expiration of the 28-hour period following the reloading at Rotterdam Junction at 7 p. m. on September 25, 1910. Thus for a continuous period of 39 hours and 30 minutes these cattle, after leaving Rotterdam Junction, N. Y., and before reaching Cleveland, Ohio, were kept confined in this car without rest, food, or water. This defendant, New York Central & Hudson River Railroad Company, had nothing whatever to do with the violation of the Twenty-Eight Hour Law (so called, Act of June 29, 1906) committed by keeping these cattle confined in this car without unloading for rest, food, and water for a continuous period of 39 hours and 30 minutes between Rotterdam Junction, N. Y., and Cleveland, Ohio, and the said the Lake Shore & Michigan Southern Railway Company had no part in the violation of said law committed by this defendant by the premature reloading of the cattle at Rotterdam Junction after the unloading for rest, food, and water. The two violations were separate and distinct violations.

[2] This is not a case where two persons jointly engage in the commission of a tort and are sued together or separately. When two or more persons do unite in the commission of a tort, they may be sued together, and one penalty will be imposed, and there will be but one collection; and when they are sued separately there may be a judgment in each case, and a collection of the costs in each case, but only

one recovery or collection of damages or penalty. This is the law in many jurisdictions, but it has no application here. And it may be that when separate actions are brought against two railroad corporations, who unite to commit a single act constituting a violation of the statute in question here, and a penalty imposed on each, that there may be a recovery of both, but that question is not here. When two or more commit two separate and several torts against the same person, there may be two actions, and a recovery in each case, and a collection in each case, and it matters not whether the recovery be a penalty or damages.

In this case this defendant, the New York Central & Hudson River Railroad Company, recognized the necessity, unless it would violate the law, of unloading this car of cattle at Rotterdam Junction for rest, food, and water for a period of at least 5 consecutive hours, and did unload, but did not give the cattle 5 hours' rest. It reloaded them at the expiration of 3 consecutive hours, and when it did so, and sent the car forward towards its destination for more than 36 hours, counting from the time of loading at the point of shipment, the violation of the statute was complete, and liability for a penalty of not less than $100 and not more than $500 was incurred. It was for this act, this violation of the statute, that this court imposed the penalty for which the judgment in this case was rendered, and it matters not that subsequently, and on the same journey between point of shipment and point of destination, the Lake Shore & Michigan Southern Railroad Company, the connecting carrier, received the car of cattle and, counting and including the time that elapsed after the car left Rotterdam Junction and up to the time it received the cattle, kept the cattle confined in the car unfed, etc., for the space of 39 hours and 30 minutes, thereby violating the statute, and on being sued, and a recovery had for that act, paid the penalty imposed on it for its act. It matters not that the case *might have been* different in its facts; that is, that this defendant might not have unloaded at Rotterdam Junction, or at any time or place before delivering the car to the Lake Shore & Michigan Southern Railroad Company, and that the latter named company might then have continued the car load of cattle on its journey to Cleveland without unloading. The statute provides:

"That no *railroad,* * * * common carrier other than by water, * * * whose road forms any part of a line of road over which cattle, sheep, swine, or other animals shall be conveyed from one state or territory or the District of Columbia into or through another state or territory or the District of Columbia, * * * shall confine the same in cars * * * for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner, into properly equipped pens for rest, water, and feeding, *for a period of at least five consecutive hours,* unless," etc.

Then follows the proviso that on consent in writing of the owner or person in custody of that particular shipment the time may be extended to 36 hours. It is also provided as follows:

"In estimating such confinement, the time consumed in loading and unloading shall not be considered, but the time during which the animals have been confined without such rest or food or water on connecting roads shall be included, it being the intent of this act to prohibit their *continuous confinement*

beyond the period of twenty-eight hours, except upon the contingencies herein-before stated."

In estimating the confinement, so as to determine whether or not the statute has been violated, we always come backwards from the unloading in question, and ascertain when the cattle were last before unloaded for rest, food, and water, or shipped, and when reloaded. Commencing our reckoning of time at that point, we go forward to the time when next unloaded for rest, food, and water, and if we find that the cattle were confined for more than 28 hours, or more than 36 hours in case of consent by the owner or person in charge, and also find that unloading was not prevented by storm, or by other accidental or unavoidable causes, we have a completed violation of the law.

The defendant in this case clearly violated the statute before turning the car over to the Lake Shore & Michigan Southern Railway Company. This last-named company, on receiving the car load of cattle with knowledge when last unloaded for rest, etc., was under obligation to at once and within a reasonable time, acting with diligence, unload for rest, food, and water. The cattle had not been unloaded for rest, food, and water for a period of at least 5 hours for more than 36 hours when the Lake Shore & Michigan Southern Railroad Company received and accepted them. This fact it knew, and it then continued the movement of the car in interstate commerce towards its destination without unloading for rest, food, and water, and in so doing was not acting jointly with this defendant, the New York Central & Hudson River Railroad Company, but was committing an independent act of offense against the statute. The defendant here had ceased its transportation of the car, and had surrendered control to the connecting company, and for its acts of offense thereafter such connecting company, the Lake Shore & Michigan Southern Railroad Company, was alone responsible.

It follows, I think, that each railroad company was liable to an action and had incurred a penalty, not for the same act or offense, but each for a separate act constituting a violation of the statute, and that verdict and judgment against the one and payment thereof in no way exonerates the other from its liability for its independent act of violation. The overlapping of time is immaterial. I think the question is settled by adjudications of the Circuit Court of Appeals in this, the Second, circuit. New York Central & H. R. R. Co. v. United States, 203 Fed. 953, 956, 122 C. C. A. 255; U. S. v. Lehigh Valley R. R. Co. (C. C.) 184 Fed. 971, affirmed 187 Fed. 1006, 109 C. C. A. 211.

In the case first cited (203 Fed. 953, 122 C. C. A. 255) the defendant carrier received certain horses from a connecting carrier and transported them to their destination, a distance of only seven miles, and was held chargeable with knowledge that they had already been confined for more than the statutory period by the connecting carrier, inasmuch as it was not shown that it made reasonable inquiry and could not ascertain the fact, and then continued the transportation in good faith. It was also held that, as the defendant carrier did not trans-

port them to their destination as quickly as reasonably possible, and used 3 hours and 35 minutes to transport them to their final destination, they having been confined for more than the statutory period when received, that defendant was guilty of a violation of the statute. The defendant confined them only 3 hours and 35 minutes, and to make it guilty of a violation of the act it was necessary to count back into the time during which the connecting carrier illegally confined them. It was also held that the fact that the connecting carrier had been sued for a penalty for its violation of the act was no bar to an action to recover a penalty from the defendant. It is true that the case does not show that the Wabash Railroad Company had actually paid the judgment for a penalty recovered against it, but it is fairly to be inferred that this payment if made would have been no defense. The Circuit Court of Appeals said:

"The judgment recovered against the Wabash Railroad Company is not a bar. The fact that it had been punished for its own delinquency furnishes no defense to the defendant, if it was *subsequently* deliquent, as the court has rightly found."

In United States v. Lehigh Valley R. R. Co. (C. C.) 184 Fed. 971, 975, Judge Holt held and said:

"I think that any railroad company which takes from a connecting road cattle that have been confined without food, water, or unloading more than 28 or 36 hours, as the case may be, and which knowingly and willfully continues to transport them, immediately incurs a *new* penalty."

This was affirmed by the Circuit Court of Appeals in this, the Second, circuit, 187 Fed. 1006, 109 C. C. A. 211. Judge Holt, in his opinion in the case referred to, called attention to the conflicting decisions on this subject (184 Fed. 974 and 975), and it is unnecessary to repeat them here. This court is bound by the decisions of the Circuit Court of Appeals in this circuit, and is in accord therewith.

It follows that the application must be denied. Ordered accordingly.