ST. LOUIS MERCHANTS' BRIDGE TERMINAL RY. CO. v. UNITED
STATES.

(Circuit Court of Appeals, Seventh Circuit.' October 7, 1913.)

No. 1,893.

1. CARRIERS (§ 37*)—CARRIAGE OF LIVE STOCK—28-HOUR LAW.

A terminal railroad company whose tracks connected with the eastern
terminus of a through line in St. Louis, and formed the only connection
between such terminus and the nearest available stockyards where live
stock could be unloaded for rest, feed, and water, which was across the
river in Illinois, by accepting from such connecting carrier cars of cattle
which had already been confined for a longer time than permitted by the
28-Hour Law (Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 [U. S. Comp.
St. Supp. 1911, p. 1341]) and moving them with all reasonable dispatch to
such yards, where they were unloaded, cannot be said to have violated
the statute.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec.
Dig. § 37.*

Liability of carrier for failure to feed, water, and rest live stock and
for violation of the 28-Hour Law, see note to St. Joseph Stockyards Co. v.
United States, 110 C. C. A. 435.]

2. CARRIERS (§ 37*) — CARRIAGE OF LIVE STOCK — STATUTORY REGULATION —
"WILLFULLY."

"Willfully," as used in the 28-Hour Law (Act June 29, 1906, c. 3594, §
1, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341]), providing for a pen-
alty or forfeiture by a carrier who knowingly and willfully fails to com-
ply with the provisions of the act, means purposely or obstinately, and
describes the attitude of a carrier who, having a free will or choice, ei-
ther intentionally disregards the statute or is plainly indifferent to it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec.
Dig. § 37.*

For other definitions, see Words and Phrases, vol. 8, pp. 7468–7481, 7835,
7836.]

In Error to the District Court of the United States for the Eastern
District of Illinois; Francis M. Wright, Judge.

Action at law by the United States against the St. Louis Merchants'
Bridge Terminal Railway Company. Judgment for plaintiff, and de-
fendant brings error. Reversed.

This suit was brought by the United States, defendant in error, against
plaintiff in error to recover several penalties for several alleged violations of
the so-called 28-Hour Law, being "An act to prevent cruelty to animals while
in transit by railroad or other means of transportation." The declaration
originally contained five counts, of which the fifth was dismissed on the trial.
Plaintiff in error filed its plea of not guilty and several special pleas, but
seems to have relied only on its plea of not guilty. The cause was submitted
to the court upon stipulations of facts without a jury. From these it appears
that the Wabash Railroad Company and the Chicago & Rock Island Railway
Company, respectively, had located the termini of their several tracks en-
tering St. Louis, Mo., from a westerly direction, together with their several
yards, at points upon the track of plaintiff in error in said city of St. Louis;
that plaintiff in error was, at the time of the said alleged violations, a Mis-
souri corporation whose duty it was to receive cars from said several railroads
and others and move them across the Mississippi river to their several rail-
road connections, as might be desired, for forwarding or otherwise; that said
roads had no other means of making connection between the termini west of
the river and those east of the river than by transportation over the lines of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff in error; that the gap thus filled by plaintiff in error covered a distance of about five miles; that the tracks of plaintiff in error also connected with the yard tracks of the National Stockyards, located at National City, Ill.; that none of the roads involved had or were so located that they could have unloading, resting, feeding, and watering pens within the city of St. Louis or at any point nearer or more convenient and available than were the National Stockyards; and that, as a matter of fact, all of the roads centering at St. Louis and at and adjacent to East St. Louis, Ill., were accustomed to have their stock freight unloaded, rested, fed, and watered at said National Stockyards. It further appears from said stipulations that plaintiff in error, on certain dates in said counts mentioned, received on its tracks in St. Louis, Mo., to be forwarded, certain cars loaded respectively with stock which had been confined en route for periods of considerably over 36 hours, which cars, without unreasonable delay, plaintiff in error transported across the river to the tracks of the National Stockyards to be unloaded, rested, fed, and watered as required by law, and that the same were by said National Stockyards promptly so cared for; that the stock named in said fourth count was consigned to parties at said stockyards; that after being so cared for by said stockyards, plaintiff in error received the stock mentioned in said counts 1, 2, and 3 and delivered it to the several roads by which it was routed forward, and that for its said service it charged and received a flat sum of $4 per car, which sum was not made a part of the joint rate. Upon this evidence the court found plaintiff in error guilty upon all four counts and entered judgment thereon and on each of them. Plaintiff in error thereupon sued out its writ of error to this court, and assigns as error the said judgment of the trial court.

T. M. Pierce and J. L. Howell, both of St. Louis, Mo., and Edward C. Kramer, Rudolph J. Kramer, and Bruce A. Campbell, all of East St. Louis, Ill., for plaintiff in error.

Wm. E. Trautmann, of East St. Louis, Ill., S. M. Clark, of Danville, Ill., and John E. Hamlin, of East St. Louis, Ill., for the United States.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). The statute under which this suit was instituted (Supplement of 1911 to Compiled Statutes of 1901, passed June 29, 1906) prohibits the confinement of stock for a period of more than 28 hours, without unloading, resting, feeding, and watering for at least 5 hours, provided that upon the written request of the owner or person in charge—separate and apart from the bill of lading—the period of confinement may be enlarged to 36 hours, and provides that any carrier "who knowingly and willfully fails to comply" with the provisions of the act "shall for every such failure be liable for and forfeit and pay a penalty," etc., except in certain cases enumerated which are not here in question.

[1, 2] The declaration charges, as the statute requires, that plaintiff in error "knowingly and willfully confined" said stock in said cars for a longer period than that permitted by the statute. As was said by the United States Circuit Court of Appeals for the Eighth Circuit in C., B. & Q. Ry. Co. v. United States, 194 Fed. 342, 114 C. C. A. 334:

" 'Willfully' means purposely or obstinately, and is designed to describe the attitude of a carrier who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements."

Thus, where the succeeding carrier did not know that the stock had been confined contrary to law, it was held that the carrier had not violated the statute. St. Joseph Stockyards Co. v. United States, 187

Fed. 104, 110 C. C. A. 432; United States v. Stockyards Terminal Ry. Co., 178 Fed. 19, 101 C. C. A. 147.

It is inferable from the record that in taking the cars in question from St. Louis, Mo., to the tracks of the National Stockyards, plaintiff in error was obliged to traverse a considerable portion of its tracks used in hauling cars from the Wabash and the Chicago & Rock Island railroad termini in St. Louis, Mo., to the forwarding connections across the river in Illinois. Were it not for this fact, it would be difficult to conceive of even colorable support for the government's contention that the statute had been violated by the above-enumerated acts. If, for instance, plaintiff in error had been compelled, in delivering the stock to an unloading place, to go in an opposite direction from the places where the western roads connected with those across the river, would there have been any pretense for the construction now sought to be placed upon the acts of plaintiff in error in taking the stock with all reasonable dispatch to the nearest, most convenient, and most suitable unloading place? Most assuredly not. How is the situation disclosed in this record different? Plaintiff in error hauled the stock in question with all due diligence, on its tracks, being the only available and quickest route to the stockyards for unloading; that being, so far as shown, the only available place for that purpose. In so doing it was placing the most humane and most reasonable construction upon the statute. As was said by Judge Adams in United States v. Union Pacific Ry. Co., 169 Fed. 68, 94 C. C. A. 433, and adopted by the court in United States v. Stockyards Terminal Ry. Co., supra, the real purpose of the legislation "was to alleviate the condition of dumb animals in transit." In the case just cited the stock was hauled 11 miles to the St. Paul stockyards at St. Paul, Minn.; that being the nearest and most suitable place for unloading. This act was regarded as a recognition of the statute rather than as a violation.

In Northern Pacific Terminal Co. v. United States (C. C. A. 9th Cir.) 184 Fed. 603, 106 C. C. A. 583, where a car load of horses had been confined for more than the period allowed by the statute, prior to its delivery to the plaintiff in error in that case, and the latter at once removed it to the Union Stockyards Company of Portland, Or., a distance of 1,300 feet, the court says:

"This action of the plaintiff in error, so far from being in contravention of the provisions of the act of Congress in question, was, in our opinion, but aiding in giving effect to its object and purpose. * * * No law should be so construed as to do violence to its clear meaning and intent, and bring about unjust or absurd results."

We have searched this record in vain for any facts tending to show that plaintiff in error knowingly and willfully violated the statute. In our opinion the acceptance, under the circumstances, of the cars of stock by the plaintiff in error, was in effect an act in the process of delivering the same to the stockyards for the purpose of unloading the stock. Had it done otherwise than it did, plaintiff in error would have been guilty of inflicting further suffering upon dumb animals, and would have sacrificed the spirit of the act for the letter.

The judgment of the District Court is reversed, with direction to grant a new trial.