UNITED STATES v. BOSTON & M. R. R.

(District Court, D. Massachusetts. July 6, 1915.)

No. 528.

CARRIERS ⊜⇒37—CONFINEMENT OF LIVE STOCK—EXCUSES.

Act June 29, 1906, c. 3594, § 1, 34 Stat. 607 (Comp. St. 1913, § 8651), prohibits interstate carriers from confining live stock in cars, etc., for longer than 28 consecutive hours without unloading them for rest, water, and feeding, unless prevented by storm or other accidental or unavoidable causes, which cannot be anticipated or avoided by the exercise of due diligence and foresight. When four car loads of sheep were delivered to defendant, there remained over 16 hours in which to make delivery, and that time would ordinarily have been sufficient. When the shipment left G., 100 miles from its destination, at which place there were facilities for unloading one car load, there remained 5 hours and 30 minutes, and there was no unloading place between that point and the destination. It was then reasonably expected that the train would make the run within that time. A hot box developed on the engine tender, and another engine was procured, which developed leaks, and the failure of the two engines to work made delivery impossible within the time limit. The first engine had recently been overhauled, and there was no special reason for anticipating a hot box, and the second engine had worked well on its last previous trip; the defect which caused the delay first developing on the run in question. *Held*, that the delay was caused by accidental or unavoidable causes, which could not be anticipated or avoided by the exercise of due diligence and foresight.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ⊜⇒37.]

Action for statutory penalties by the United States against the Boston & Maine Railroad. Judgment for defendant.

Charles S. Pierce, of Boston, Mass., for defendant.

MORTON, District Judge. The defendant confined the sheep without unloading for 6½ or 7 hours beyond the permitted time. The only question is whether it was prevented from unloading them by "accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight." Act June 29, 1906, § 1. The shipment consisted of four cars, which were delivered to the defendant at Rotterdam Junction on February 11, 1914, at 11 a. m., and left there 20 minutes later for Boston with 16 hours and 10 minutes in which to make delivery, which would ordinarily be sufficient. There is no place between that point and Boston, where a shipment of this size can be unloaded at the same time. The only facilities are at Greenfield, and are capable of handling only one car load at a time.

The train passed Greenfield and arrived at East Deerfield that night at 8:30 p. m. It left that point, which is about 100 miles from Boston, at 10 p. m., with 5 hours and 30 minutes in which to make the delivery. It was reasonably expected by the railroad officials that the train would make the run within that time. Moreover, as there were no unloading facilities at that place, or between there and Boston, there

seems to have been nothing to do but to push the sheep forward as fast as possible.

After leaving East Deerfield a hot box developed on the engine tender. There was no special reason for anticipating such a contingency, as the engine was recently out of the shops, where it had been overhauled. Another engine was procured and substituted, and the train proceeded. This engine developed leaks in its boiler and had to be withdrawn at South Acton. On the last previous trip on which it had been used, it had operated well. The defect which necessitated laying it off first developed on this run. A third engine was substituted, which pulled the train to Boston. Undoubtedly one of the causes for the failure of the first and second engines was the extreme cold, about 20 degrees below zero, which occurred on the morning of February 12th.

South Acton is within the district covered by the suburban service of the defendant. The train in question had lost its place on the schedule, and from that point was worked along so as not to interfere with the suburban schedule, reaching Boston about 10 or half past 10 on the morning of February 12th. As the unloading time had expired before the train left South Acton, the defendant's liability is not affected by this last condition, which is relevant only upon the question of the amount of penalty.

No reason is suggested why the defendant should have foreseen that the first engine was likely to develop a hot box which would necessitate withdrawing it en route, still less why it should anticipate that the second engine, which had worked well on its previous run, should suddenly develop a leaky boiler. As I understand the facts, it was the failure of both of these engines, and not one of them alone, which delayed the train so that delivery was impossible within the time limit.

I therefore find that the defendant was prevented by accidental or unavoidable causes which could not be anticipated or avoided by the exercise of due diligence and foresight from unloading the shipment of sheep in question. Chicago, B. & Q. R. R. Co. v. United States, 194 Fed. 342, 114 C. C. A. 334.

Judgment for the defendant.