UNITED STATES v. CLEVELAND, C., C. & ST. L. RY. CO. (two cases).

(District Court, N. D. Ohio, E. D. January 30, 1920.)

Nos. 9934, 10088.

1. CARRIERS ☞37—LOCAL CARRIER NOT LIABLE UNDER TWENTY-EIGHT HOUR LAW FOR TRANSPORTING CATTLE TO YARDS FOR UNLOADING FOR WATER, FOOD, AND REST.

The receipt of live stock by a railroad company, whose line connected with one over which the stock was being shipped, but formed no part of the through route, and the transporting of such stock with due diligence to a reasonably convenient stockyard for unloading for feed, water, and rest, *held* not a violation of the Twenty-Eight Hour Law (Comp. St. § 8651), although the stock was confined longer than the time limited.

2. CARRIERS ☞37—LIABILITY OF LOCAL CARRIER UNDER TWENTY-EIGHT HOUR LAW.

Where an interstate carrier of live stock has contracted with the owner of stockyards, near, but not on, its line, to unload, feed, water, and rest the stock in transit, a connecting carrier, which transports the stock from such through line to the yards is not responsible for delay in unloading by the stockyards company, which in such case is agent of the through carrier.

At Law. Action by the United States against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company. Two cases. On demurrers to answers. Overruled.

E. S. Wertz, U. S. Atty., of Cleveland, Ohio.

Cook, McGowan, Foote, Bushnell & Lamb, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. These cases arose under the twenty-eight hour stock law act of June 29, 1906 (U. S. Comp. Stat. 1916, § 8651). Defendant has filed an answer to the first, fourth, and fifth causes of action in case No. 9934, and to the first and second causes of action in case No. 10088, and to these answers plaintiff has demurred generally.

All the answers set up the same defense in precisely the same language, varying only in describing the shipment and in one respect, presently to be noted, in the answer to the fourth and fifth causes of action in case No. 9934. All the shipments were made in interstate commerce from an originating point on the lines of the New York Central Railroad Company to the destination point, somewhere east of Cleveland, Ohio, in which routing and carriage the defendant's road formed no part. The answers, after admitting the shipments as alleged and that the cattle were confined in all cases for a continuous period in excess of 36 hours without being unloaded for rest, feed, and water, sets up a defense which can best be stated by quoting it:

"Further answering, defendant says that said cattle shipment originated on the lines of the New York Central Railroad Company, and was to be transported entirely over the lines of said railroad company to the city of New York, in the state of New York; that in the course of transportation of said cattle from Chicago, Illinois, to the city of New York, New York, over the lines of said railroad company, it became necessary for said railroad company to

unload said stock at Cleveland, Ohio, for the purpose of resting, feeding, and watering the same, in compliance with the laws of the United States governing the transportation of such stock; that said New York Central Railroad Company, not having any stockyards of its own, or on the line of its railroad, at Cleveland, Ohio, has contracted and arranged with the Cleveland, Union Stockyards Company at Cleveland, Ohio, for the performance by it of such service, said Cleveland Union Stockyards Company being located on the line of the railroad of this defendant; that for the purpose of reaching the yards of said Stockyards Company this defendant permitted said New York Central Railroad Company to transport said cars of cattle to said stockyards, over the line of railroad of this defendant, from the point of connection between its railroad and that of said New York Central Railroad Company, defendant receiving for such service a switching charge in the sum of two dollars and fifty cents ($2.50); that said switching charge formed no part of the through rate charged for the transportation of said stock, and defendant's road, over which said service was performed, formed no part of the through route for the transportation of said stock from point of origin to destination thereof, and defendant was not a connecting carrier of said stock; that said stock was transported to said stockyards over defendant's tracks in the ordinary and usual time required for such service, and was delivered to said stockyards company at its said stockyards in sufficient time for said stock to be unloaded before the expiration of the period of thirty-six hours allowed by law for the continuous confinement of such stock without food, rest, or water; that any confinement of said stock beyond said period of thirty-six hours was due solely to the failure of said New York Central Railroad Company and of said Cleveland Union Stockyards Company, their agents and servants, to unload said stock within said statutory period; that the service provided and furnished by said Cleveland Union Stockyards Company in the unloading, feeding, watering, and resting of said stock was performed entirely for the benefit of said New York Central Railroad Company, and under contract or arrangement made directly between said Stockyards Company and said New York Central Railroad Company, this defendant not being a party to said contract; that it has not violated any of the provisions of the acts of Congress relating to transportation of such cattle and especially the act of Congress of June 29, 1906, referred to in the petition, and that it is not liable to the United States for any penalty under any of said acts of Congress."

The answers in case No. 10088 are precisely in these terms, and the answer in case No. 9934 to the fourth and fifth causes of action differ only in that, instead of alleging that the defendant permitted the New York Central Railroad Company to transport with its own crews said cars of cattle over defendant's line of railway to the Union Stockyards in Cleveland, Ohio, allege that such transportation was made by the defendant.

[1] I am of opinion that the facts stated in these several answers constitute a good defense, and that the demurrer thereto should be overruled. In exact principle, if not upon the exact facts, the question here involved is ruled by the following cases: United States v. Stockyards Terminal Railway Co. (8 C. C. A.) 178 Fed. 19, 101 C. C. A. 147; Northern Pacific Terminal Co. v. United States (9 C. C. A.) 184 Fed. 603, 106 C. C. A. 583; Merchants' Bridge Terminal Railway Co. v. United States (7 C. C. A.) 209 Fed. 600, 126 C. C. A. 422; United States v. Union Pacific Railroad Co. (8 C. C. A.) 213 Fed. 332, 130 C. C. A. 34. All these cases have been cited with approval in the recent case of United States v. Chicago, Milwaukee & St. Paul Railway Co. (8 C. C. A.) 250 Fed. 442, 162 C. C. A. 512. In this last case it is held that receipt by a connecting carrier of a stock shipment for

transportation, and not merely to be unloaded for feed, water, and rest, is a violation of this act, if done knowingly and willfully, but that this holding in no wise conflicts with the other cases cited, in which it is held that such receipt and transportation, if performed with due promptness, for the purpose of being unloaded for feed, water, and rest, is not an offense. It is further said that the distinction between the two lines of conduct and the reason therefor is well drawn in United States v. Lehigh Valley Railroad Co. (C. C.) 184 Fed. 971 (Holt, District Judge), affirmed without report (3 C. C. A.) 187 Fed. 1006, 109 C. C. A. 211.

These cases, it seems to me, settle the law that a terminal carrier, or any other carrier, may receive stock to be carried with due diligence to any reasonably convenient stockyard, for the purpose of being unloaded as required by law, without committing an offense; and this is true, even though the lines thus used may be part of a connecting line, which it is necessary to use in performing the original contract of interstate carriage.

[2] In the instant case, defendant as to three shipments merely permitted a section of its track to be used, and in two cases merely switched the shipment over its line from the New York Central Railroad Company's line to the Union Stockyards, with which the New York Central had a contract to feed, water, and rest cattle in compliance with this law. The defendant, as well as the Stockyards Company, was an agency availed of by the New York Central Railroad Company to comply with the law. Its lines did not form any part of the line of road over which the cattle were to be conveyed from one state to another. If the failure of the Stockyards Company to perform the labor of unloading the stock with due promptness is a matter of importance, this failure must be imputed, not to the defendant, but to the New York Central, whose agency it was; and on which the duty rests to comply with the law.

Two cases only are cited by plaintiff's counsel in support of its demurrer, namely, United States v. St. Joseph Stockyard Co. (D. C.) 181 Fed. 625, and United States v. Northern Pacific Terminal Co. (C. C.) 186 Fed. 947. Both are decisions by District Judges, and are in conflict with the Circuit Court of Appeals decisions already cited. The first named was overruled by the Circuit Court of Appeals (187 Fed. 104, 110 C. C. A. 432), and the second was upon tthe third and fourth propositions, the only ones in point, overruled in 209 Fed. 600, 126 C. C. A. 422.

The demurrers will be overruled. Exceptions may be noted.