## UNITED STATES v. TERMINAL R. ASS'N OF ST. LOUIS.

(Circuit Court of Appeals, Seventh Circuit. February 14, 1924.)

### No. 3304.

1. Carriers ⬅️38—Terminal carrier may be liable under Twenty-Eight Hour Live Stock Law.

   A carrier is not relieved from liability under the Twenty-Eight Hour Live Stock Law (Comp. St. §§ 8651–8654), merely because it is a terminal carrier.

2. Carriers ⬅️38—Terminal carrier promptly conveying and unloading live stock not liable under Twenty-Eight Hour Law.

   Where a terminal carrier received cars containing live stock, and promptly conveyed and unloaded them at the nearest unloading station, it is not criminally liable under the Twenty-Eight Hour Live Stock Law (Comp. St. §§ 8651–8654), though the total confinement of the live stock exceeded 36 hours.

In Error to the District Court of the United States for the Eastern District of Illinois.

Proceeding by the United States against the Terminal Railroad Association of St. Louis. From a judgment for defendant, the United States brings error. Affirmed.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

L. V. Walcott, of East St. Louis, Ill., for plaintiff in error.
Edw. C. Kramer, of East St. Louis, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge.    Defendant in error was charged with having violated the so-called Twenty-Eight Hour Live Stock Law (Comp. St. §§ 8651–8654). The facts were stipulated, and a judgment discharging the carrier pronounced.

Three separate violations were charged: The first involved a car of live stock shipped from Cabool, Mo., to the National Stockyards near East St. Louis. Live stock was confined in the car for 34 hours and 20 minutes prior to the delivery to defendant, which took 2 hours and 10 minutes to make delivery to the National Stockyards, the nearest possible unloading point. The second count charged a confinement of 37 hours and 20 minutes, 34 hours and 35 minutes of which time expired before defendant received the car. The third charge covered transportation of three carloads of live stock confined for 36 hours and 40 minutes, of which time 35 hours and 5 minutes were consumed before defendant received the shipment. In each instance the owner in writing consented to the confinement of 36 hours.

Defendant is a terminal and switching railroad operating between the cities of St. Louis and East St. Louis, and the village of National City.

It was stipulated:

"That the defendant in each of said shipments moved said live stock from the point where the same was delivered to it to the unloading chutes at National Stockyards where the same was unloaded within a reasonable length of time, and that the defendant moved said live stock from said point where the same was delivered to it to said National Stockyards as soon as it reasonably could."

[1] Defendant was not relieved from liability under the Hours of Service Act, merely because it was a terminal railroad. United States v. Brooklyn Terminal, 249 U. S. 296, 39 Sup. Ct. 283, 63 L. Ed. 613, 6 A. L. R. 527. It contends, however, that it is relieved from any criminal liability in this case because it did not "knowingly and willfully" fail to comply with the provisions of the act.

[2] The stipulation exonerates defendant of any charge of negligence. When it received the cars containing live stock it conveyed them promptly to the nearest unloading station and caused them to be promptly unloaded. Under numerous decisions it was thereby relieved of criminal liability, notwithstanding the total confinement of the live stock exceeded 36 hours. United States v. Chicago Junction Ry. Co. (D. C.) 211 Fed. 724; Northern Pac. Terminal Co. v. United States, 184 Fed. 603, 106 C. C. A. 583; St. Joseph Stockyards Co. v. United States, 187 Fed. 104, 110 C. C. A. 432; St. Louis Merchants' Bridge Terminal Co. v. United States, 209 Fed. 600, 126 C. C. A. 422; United States v. Delaware, L. & W. R. Co. (D. C.) 220 Fed. 944.

But the government asks us to repudiate the holding of these cases and adopt one which it contends is more consistent with the humane purpose of the law  That is to say, we are asked to fasten criminal liability upon the last carrier when the combined action of it and the

preceding carriers results in continuous and uninterrupted confinement of live stock for more than 36 hours, notwithstanding such last-named carrier has done all it could to hasten the unloading of the live stock. To so hold would place a great, and we believe an unjust, liability on terminal railroads. It would ignore the maxim that "Guilt is personal," and in effect strike from the statute the words "knowingly and willfully." If the terminal railroad could refuse to receive the live stock that had been in transit for such a time as to make delivery to the yard chutes within 36 hours impossible, more support for such a holding would exist. But even then the purpose of the enactment would be frustrated rather than furthered. For if the terminal railroad could refuse to accept the shipment when the live stock had been continuously confined for a long period of time, say 35 hours, the effect would be to confine the dumb animals for a period longer than would result if the terminal railroad took the cars and delivered them to the nearest unloading place.

We are not to be understood, however, as holding that the terminal carrier's duty is fulfilled by transporting the live stock in its accustomed manner or usual way. It may well be that such carrier, knowing that cars containing live stock had been in transit many hours, should give preference to these cars over other live stock shipments from nearer points. United States v. New York Cent. & H. R. R. Co. (D. C.) 221 Fed. 1000. But such an issue is not present in the instant case, and need not be decided.

The stipulated facts are full and detailed, and while we do not believe it necessary, in view of the above quotation, to detail them in this opinion, we have no hesitancy in saying that the conditions and circumstances under which the defendant carried the three shipments above referred to as thus set forth supports the statement that "defendant moved said live stock from said point where the same was delivered to it to said National Stockyards as soon as it reasonably could."

Defendant's duty was plain. It was required to receive the shipment. It could best carry out the purpose of this humane statute by transporting the live stock as promptly as possible to the nearest unloading place. If in so doing it exercised proper diligence, it was relieved of criminal liability.

The judgment is affirmed.