## UNITED STATES v. BALDWIN et al.
### No. 3471.

District Court, D. Nebraska, Omaha Division.

Jan. 8, 1937.

Fred G. Hawxby, Asst. U. S. Atty., of Omaha, Neb.

Edson Smith and Kennedy, Holland, De Lacy & Svoboda, all of Omaha, Neb., for defendants.

DONOHOE, District Judge.

This is an action seeking to recover a penalty for an alleged violation of the so-called Twenty-Eight Hour Law (45 U.S.C.A. §§ 71–74).

From the agreed statement of fact on file, it appears that a shipment of livestock was confined in cars by the defendants for a period of more than thirty-six hours, without unloading for rest, water, and feed. The confinement was not done intentionally, but was due to a mistake or error in transmitting or receiving a message reporting the time of loading. The report to the train dispatcher showed the hour of loading as 8:20 p. m., when it should have shown 5:20 p. m. The responsibility for ordering the cars set out from the train was upon the train dispatcher. The wheel report in the possession of the train conductor correctly noted the hour of loading, but the conductor was not charged in his line of duty with any responsibility to order out the cars from the train. That duty and responsibility, as stated, was vested in the train dispatcher.

The question is, Does this state of facts constitute a cause of action under the law?

Section 1 of the act (45 U.S.C.A. § 71) prohibits a carrier from confining livestock in cars for a period longer than twenty-eight consecutive hours without unloading for rest, water, and feed for a period of at least five consecutive hours, "unless prevented by storm or by other accidental or unavoidable causes which cannot be anticipated or avoided by the exercise of due diligence and foresight." The time of shipment may be extended to thirty-six hours upon written request, and that was done in this case.

We are not concerned with section 2 of the act (45 U.S.C.A. § 72) for our present inquiry.

Section 3 of the act (45 U.S.C.A. § 73) provides that any railroad company or the receiver, trustee, or lessee "who knowingly and willfully fails to comply with the provisions of the two preceding sections shall for every such failure be liable for and forfeit and pay a penalty of not less than $100 nor more than $500."

Section 4 (45 U.S.C.A. § 74) provides that the penalty created by the preceding sections shall be recovered by civil action.

Section 1 of this act imposes a duty to be performed by the carrier, and section 3 imposes a penalty, not for the failure to perform the duty, but only when the carrier disregards that duty "knowingly and wilfully."

This act has been construed by a number of courts, and it would seem that some of the jurisdictions are not in agreement, but we are of the view that any questions involved in this case have been settled for us by our own Circuit Court of Appeals and by the Supreme Court of the United States, and we can think of no profit to be gained by considering or reviewing cases from other jurisdictions.

In the case of United States v. Union Pacific Railway Company, 169 F. 65, the Circuit Court of Appeals construed these sections of the statute in a case where the railroad company contended that its violation of the act was not willful, notwithstanding the fact that it admitted that its violation was knowingly done. Judge Adams, who wrote the opinion for the court, called attention to its former holding in the case of Armour Packing Company v. United States, 153 F. 1, 23, 14 L. R.A.(N.S.) 400, in which similar language in the Elkins Law (49 U.S.C.A. §§ 41–43) was involved, and in which the court announced: "A simple purpose to do the act

forbidden, in violation of the statute, is the only criminal intent requisite to a conviction of a statutory offense, which is not malum in se."

That case was taken to the Supreme Court of the United States (209 U.S. 56, 28 S.Ct. 428, 437, 52 L.Ed. 681), and the court in review announced and approved this principle of the law in the following language: "While intent is, in a certain sense, essential to the commission of a crime, and in some classes of cases it is necessary to show moral turpitude in order to make out a crime, there is a class of cases within which we think the one under consideration falls, where purposely doing a thing prohibited by statute may amount to an offense, although the act does not involve turpitude or moral wrong."

In keeping with this holding, the court in the case first above cited held in effect that, since the carrier admitted having knowingly and intentionally violated the statute, it was liable, and applied the principle of law that the court announced in construing the Elkins Law to the Twenty-Eight Hour Law, now involved.

In the case of the Chicago, Burlington & Quincy Railroad v. United States (C.C. A.) 194 F. 342, 346, Circuit Judge Sanborn adopted with approval the following construction of this statute: " 'Willfully' means 'purposely or obstinately, and is designed to describe the attitude of a carrier who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.' "

The case of United States v. Stockyards Terminal Ry. Co. (C.C.A.) 178 F. 19, 23, involves a construction of this same act. I quote the following from the opinion, which includes a quotation from Judge Van Devanter in a former case: "Section 3 of the statute makes a carrier liable for the penalty for violating sections 1 and 2 of the act only when it knowingly and willfully fails to comply with the provisions of those sections. These qualifying words cannot be disregarded. In St. Louis & San Francisco Railroad Co. v. United States (C.C.A.) 169 F. [69], 73, Judge Van Devanter, referring to the words 'knowingly and willfully,' in this section of the statute, said: 'They mean something, and whatever they may be is an essential element to every right to the penalty. "Knowingly" evidently means with a knowledge of the facts which taken together constitute the failure to comply with the statute, as is the case where one carrier receives from another a car loaded with cattle, and, with knowledge of how long they then had been confined in the car without rest, water, or food, prolongs the confinement until the statutory limit is exceeded. "Willfully" means something not expressed by "knowingly," else both would not be used conjunctively. * * * But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition. * * * So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements.' "

In the foregoing cases, the carrier was contending that it was necessary to show turpitude or moral wrong. This, the courts held was not necessary—that all that was necessary to show was that a violation was purposely or obstinately performed as an attitude of the carrier, who, having a free will or choice, intentionally disregarded the statute, or was plainly indifferent to its requirements. So, if we transpose the proposition of law, for application to the case at bar, we must hold that it is incumbent upon the plaintiff, as a basis to its right of recovery, to show that the violation was purposely and obstinately done, and that the defendant had a free will or choice and intentionally disregarded the terms of the statute, or was plainly indifferent to its requirements.

We find nothing in the stipulation of facts to indicate or establish any such state of affairs. The violation was clearly due to an error of some employee in either transmitting or receiving a message, and in recording the hour of loading as 8:20 p. m. instead of 5:20 p. m. The responsibility for ordering the cars out for feed, water, and rest, according to the stipulation, was upon the train dispatcher at Falls City, Neb. The only information that this employee had of the time of loading was the hour of 8:20 p. m. How can it be said that since he relied upon that information that he was obstinately and purposely violating this section of the statute, when according to his only information the shipment would arrive at Omaha well within the time limit. True, the wheel report on the car of cattle

showed the correct hour of loading, but this report was in the possession of the conductor of the train, and it was no part of the responsibility of the conductor to order the cars set out from the train—that was the duty of the train dispatcher. The conductor was busy with his own duties and responsibilities. He had no notice or reason to suspect that the consist report in the hands of the train dispatcher did not correspond with the wheel report. At most, all that may be said was that there was negligence somewhere on the part of some of the employees, but there is nothing to indicate that such negligence was willful, or that the acts were performed intentionally, purposely, or with indifference to the requirements of the statute.

The findings of fact and conclusions of law will be as requested by the defendants. Judgment will be entered accordingly.