### UNITED STATES of America, Appellant,

v.

### LO BUE BROTHERS, a Partnership; Mario Lo Bue, Fred Lo Bue, and Joseph Lo Bue, Partners; and William Luther Woodall, Appellees.

No. 16230.

United States Court of Appeals
Ninth Circuit.

Dec. 21, 1959.

George C. Doub, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., Neil Brooks, Asst. Gen. Counsel, John S. Griffin, Los Angeles, Cal., Donald A. Campbell, Attys., Dept. of Agriculture, Washington, D. C.,

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Jordan A. Dreifus, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

G. V. Weikert, Los Angeles, Cal., for appellees.

Allen F. Mather, Los Angeles, Cal., Karl D. Loos, Washington, D. C., for amicus curiae Sunkist Growers, Inc.

Before STEPHENS and HAMLIN, Circuit Judges, and LINDBERG, District Judge.

HAMLIN, Circuit Judge.

The United States filed an action in the District Court for the Southern District of California pursuant to the provisions of Section 8a(5)–(7) of the Agricultural Marketing Agreement Act of 1937, as amended, 7 U.S.C.A. § 601 et seq. (the Act) and 28 U.S.C.A. §§ 1345 and 1355. Named as defendants, appellees here, were Mario, Fred and Joseph Lo Bue, doing business under the partnership name of Lo Bue Brothers, and their sales manager, William Woodall.

Lo Bue Brothers, who operate as growers, handlers and shippers of navel oranges, and have a packing plant at Lindsay, California, were subject to an order of the Secretary of Agriculture regulating the handling of navel oranges. Pursuant to this order and regulations issued thereunder,[1] Lo Bue Brothers were au-

---

1. The Act authorizes the Secretary of Agriculture, upon notice and opportunity for hearing, to issue and amend orders regulating the handling of certain agricultural commodities, including oranges. 7 U.S.C.A. § 608c(1)–(7).

The Secretary of Agriculture issued Marketing Order No. 14, regulating the handling of navel oranges in Arizona and a designated part of California, effective October 22, 1953. 18 F.R. 5638 et seq. The order was amended on August 1, 1954. 19 F.R. 2941 et seq.; see 18 F.R. 4708–4722; 7 C.F.R. 914.1 et seq. The order provides for establishment of a Navel Orange Administrative Committee to assist in administration of the regulatory program and to make recommendations to the Secretary with respect to volume and size regulations. 7 C.F.R. §§ 914.20–914.51, 914.63.

Under the order the area of production is divided into four prorate districts.

7 C.F.R. 914.66. The shipments involved here were from prorate district number 1, commonly known as Central California.

Whenever the Secretary finds, from the recommendations and information submitted by the administrative committee, or from other available information, "that to limit the quantity of oranges which may be handled in each prorate district during a specified week will tend to effectuate the policy of the Act, he shall fix such quantity" of oranges that may be handled. 7 C.F.R. § 914.52.

Each person with oranges available for shipment is required to make application for a prorate base to the administrative committee, and the committee fixes a prorate base in terms of a percentage for each person entitled thereto. 7 C.F.R. § 914.53. Each person's weekly allotment is then calculated by multiplying the total quantity authorized to be

thorized to handle certain quantities of navel oranges for the periods from 12:01 a. m., April 1, 1956 to 12:01 a. m., April 8, 1956 (the first week), and from 12:01 a. m., April 8, 1956 to 12:01 a. m., April 15, 1956 (the second week). During the first week Lo Bue Brothers shipped 23,-416 cartons in excess of their allowance of 12,363 cartons, and during the second week, prior to April 9, 1956, Lo Bue Brothers shipped 2,933 cartons in excess of their allowance of 7,433 cartons, for a total excess of 26,349 cartons.

The complaint alleged that Lo Bue Brothers, acting through their sales manager, Woodall, "willfully" shipped navel oranges in excess of their allotment or quota for the two weekly periods, and, pursuant to the provisions of § 8a(5) of the Act, prayed for judgment for triple the market value of the excess, or $149,-612.22.[2]

The evidence disclosed the circumstances leading to the shipment of the fruit in question. Mario Lo Bue, the managing partner of Lo Bue Brothers, testified that in the spring of 1956—

" * * * the fruit was deteriorating and dropping heavy on the ground. * * * We sought to get protection on these oranges that was

handled by his prorate base. 7 C.F.R. § 914.54.

The quantities of navel oranges which could be handled in prorate district number 1 during the weeks in question were 277,200 cartons for the first week (Navel Orange Regulation No. 81; 21 F.R. 2037) and 231,000 cartons for the second week (Navel Orange Regulation No. 82; 21 F.R. 2267).

2. Section 8a(5), 7 U.S.C.A. § 608a(5), provides in part:

"Any person willfully exceeding any quota or allotment fixed for him * * by the Secretary of Agriculture, and any other person knowingly participating, or aiding, in the exceeding of said quota or allotment shall forfeit to the United States a sum equal to three times the current market value of such excess, which forfeiture shall be recoverable in a civil suit brought in the name of the United States."

dropping. We felt there was some law that would protect the grower from losing all this fruit. * * * "

Accordingly, an attorney was consulted to determine whether there was any way in which they could ship the excess fruit. The Court found that the attorney was experienced in the law and the procedure particularly applicable under the laws administered by the Department of Agriculture. He advised them that the proper and only procedure to obtain a ruling on the legality of their allotment was to file a petition with the Secretary of Agriculture under § 8c(15) (A) [3] of the Act (called a "15(A) petition") and that when such a petition was filed with the Secretary in good faith the restrictions on shipments in excess of allotments would be suspended until there was a decision on the petition and during that period petitioner, unless enjoined from further shipments, would be exempt from penalties prescribed by the Act. He further advised them that in the only court decisions on the subject the "immunity from penalty" provision in § 8c(14) had been construed to extend not only to criminal penalties provided for in that section (or subsection), but also to civil penalties provided for in section (or subsection) 8a(5) as well.[4]

3. Section 8c(15) (A) provides that any handler subject to an order may file a written petition with the Secretary of Agriculture objecting to the order and "praying for a modification thereof or to be exempted therefrom." A handler filing such a petition is entitled to a hearing and judicial review of the administrative determination. 7 U.S.C.A. § 608c(15) (A, B).

4. Section 8c(14) provides for a fine on conviction of violation of an order, but that if a 15(A) petition "was filed and prosecuted by the defendant in good faith and not for delay, no penalty shall be imposed under this subsection" for violations occurring between the date of filing of the petition and the date the defendant is given notice of the Secretary's ruling.

Pendency of such proceedings does not prevent the United States or the Secretary from obtaining relief pursuant to § 8a(6), which authorizes district courts to enforce and restrain violations of orders. 7 U.S.C.A. § 608c(15) (B).

Counsel for Lo Bue Brothers represented the defendants in each of these cases, and it is unquestioned that he knew and correctly represented their import to Lo Bue Brothers.

In reliance on the attorney's advice and the information he furnished, Lo Bue Brothers directed the attorney to prepare a 15(A) petition. The petition was prepared, signed by Mario Lo Bue on Thursday, April 5, and mailed in Los Angeles California, air mail, registered, on the same day.[5] Late the next day, Friday, April 6, the attorney telephoned Mario Lo Bue, with Woodall on the extension, and told them that by then the petition would be on file with the Secretary of Agriculture, and that they could ship fruit in excess of their allotment until they received an injunction or restraining order.

The Court also found that the attorney truthfully informed appellees that his past experience had established the fact that similar petitions mailed by him from Los Angeles, California, to the Secretary of Agriculture at Washington, D. C., were received and filed the next day.

Mario Lo Bue testified that the only reason for filing the 15(A) petition was because the fruit was going bad and that the attorney had advised him that by filing the petition "we could ship these oranges and be in our rights. * * *" Similar statements were made by Woodall.

A 15(A) petition is "deemed to be filed when it is received by the hearing clerk." 7 C.F.R. § 900.69(d). The petition arrived in the Washington, D. C. Post Office about 2:00 p. m. on April 6, 1956, but was not filed in the office of the Sec-

---

The cases referred to were all decided in 1944 in the District Court for the Southern District of California. They are U. S. v. William S. Wright, No. 3036-H-Civil; U. S. v. Alexander Chaskin, No. 3065 O.C.-Civil; U. S. v. A. Levy & J. Zentner Co., No. 3081-H-Civil. In each of these cases the Government sought to recover civil penalties under § 8a(5) for orange shipments in excess of allotments. The following conclusion of law from the Wright case is representative of the holding in all:

"Since a petition pursuant to Subsection 15, Section 608c Title 7 U.S.C. was filed and prosecuted by defendant, William S. Wright, in good faith and not for delay, no penalty can be imposed and no forfeitures can be recovered against said defendant William S. Wright for any of the violations involved herein."

Although none of these cases was appealed, the Government here makes an extended argument that there is no warrant for extending the "immunity from penalty" provision in § 8c(14) to the penalties called for by § 8a(5), and that insofar as these cases so hold that they are incorrect. However, in view of our conclusion on another branch of this case, it is unnecessary to pass upon the soundness of these decisions and we make no intimation regarding them.

5. The petition alleged, in substance, that the Navel Orange Administrative Committee, with the approval of the Secretary of Agriculture (1) reduced the quantities of Central California navel oranges permitted to be marketed week by week during the shipping season so far below normal that a large quantity of such oranges remained unharvested and unshipped by April 1, (2) that the normal shipping season for Central California navel oranges ends not later than April 1 of each year, (3) that navel oranges from Central California held beyond that date deteriorate so rapidly that they have little or no commercial value, (4) that it had been the uniform practice prior to 1956 to terminate all restrictions on shipments from Central California not later than March 25 of each year, but that the Committee indicated it intended to continue to restrict weekly shipments in 1956 well into May, some eight weeks beyond its historical life, while extending such restrictions for Southern California fruit less than two weeks beyond its historical life, and (5) that the action of the Committee in so restricting the shipment of Central California fruit was—

"arbitrary, capricious, unreasonable, inequitable, discriminatory, oppressive, unfair, and unjust, that the declared policy and purpose of the Act was thereby defeated, and that said defendant and its growers were thereby being deprived of their property without due process of law, and their property had been and was thereby being taken, confiscated and destroyed without compensation therefor, all in violation of the Fifth Amendment to the Constitution of the United States."

retary of Agriculture until the afternoon of April 9.[6] However, Lo Bue Brothers shipped the oranges in question in 26 separate shipments, 23 on Saturday, April 7, and 3 on Sunday, April 8, 1956.[7] Thus, there was no petition on file when the shipments were made over the week-end of April 7–8.

On Thursday, April 12, the Government filed an action under § 8a(6) against Lo Bue Brothers to enjoin violation of the order. A temporary restraining order was issued, and was followed on April 19 by a consent decree permanently enjoining Lo Bue Brothers and their agents from violating the order and any lawful order, rule or regulation issued by the Secretary of Agriculture thereunder. In a separate administrative proceeding the relief requested in the petition was denied and the petition dismissed.[8]

The District Court entered judgment in favor of appellees and dismissed the complaint, finding and concluding that Lo Bue Brothers did not *willfully* exceed any quota or allotment within the meaning of § 8a(5) of the Act. The only question is whether, under all the circumstances, this finding and conclusion is correct.

The Government argues that "willfully exceeding any quota or allotment" constitutes an offense malum prohibitum, as opposed to an offense malum in se, and that liability under § 8a(5) is not contingent on bad intent or evil motive, or upon knowledge that the action is illegal, but that a violation is established if the act allegedly constituting the violation is intentional, deliberate or voluntary and not merely accidental or unintentional or done through inadvertence or mistake. Browder v. United States, 312 U.S. 335, 342, 61 S.Ct. 599, 85 L.Ed. 862; Armour Packing Co. v. United States, 209 U.S. 56, 70–71, 85–86, 28 S.Ct. 428, 52 L.Ed. 681; Riss & Company v. United States, 8 Cir., 262 F.2d 245, 247–251; United States v. Gris, 2 Cir., 247 F.2d 860, 864; Trenton Chemical Co. v. United States, 6 Cir., 201 F.2d 776, 777–780, certiorari denied 345 U.S. 994, 73 S.Ct. 1134, 97 L.Ed. 1401; Dennis v. United States, 84 U.S.App.D.C. 31, 171 F.2d 986, 990–991, affirmed on other grounds, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734; United States v. Union Pac. R. Co., 8 Cir., 169 F. 65, 67; United States v. Perplies, 7 Cir., 165 F.2d 874, 876; Fields v. United States, 82 U.S.App.D.C. 354, 164 F.2d 97, 99–101; Chicago, St. P. M. & O. Ry. Co. v. United States, 8 Cir., 162 F. 835, 840–842, certiorari denied 212 U.S. 579, 29 S.Ct. 689, 53 L.Ed. 659; American Surety Co. v. Sullivan, 2 Cir., 7 F.2d 605, 606

6. It was stipulated that a postal employee at the main post office in Washington, D. C., if called as a witness would have testified, among other things, that—

"The afternoon mail for the Agriculture Department leaves the United States Post Office at approximately 2:30 to 3:00 p. m. daily except Saturday and Sunday when there is no delivery. Mail arriving at the United States Post Office for the Agriculture Department after approximately 2:00 p. m. on Friday is held over until the first delivery on Monday morning."

7. The oranges belonged to fourteen or fifteen growers, and were handled by Lo Bue Brothers only as their agent. The gross selling price of the excess was $49,870.74; the Government seeks triple the value of the excess, or $149,612.22. The net sum received by Lo Bue Brothers as compensation for handling the oranges amounted to approximately $1,800.00.

In addition to the 2,933 excess cartons handled prior to April 9 (the date the petition was filed), 5,915 additional excess cartons were handled on and after April 9. The Government makes no claim on account of this latter amount.

8. An answer to the petition was filed on May 9, 1956, and a hearing was held on June 14, 1956. Both parties introduced oral and documentary evidence and filed briefs. On September 28, 1956, the Hearing Examiner issued a report containing proposed findings of fact and conclusions and recommending that the petition be dismissed. After Lo Bue Brothers had filed written exceptions, the Judicial Officer of the Department of Agriculture, on December 3, 1956, issued his decision and order denying the relief requested, and dismissing the petition. Lo Bue Brothers did not seek judicial review pursuant to § 8c(15) (B).

Conceding the correctness of the Government's characterization of the offense as malum prohibitum, we do not believe that other cases have applied such a strict standard. In United States v. Illinois Central Railroad Co., 1938, 303 U.S. 239, 242–243, 58 S.Ct. 533, 535, 82 L.Ed. 773, the Supreme Court said:

"In statutes denouncing offenses involving turpitude, 'willfully' is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, shows that it often denotes that which is 'intentional, or knowing, or voluntary, as distinguished from accidental,' and that it is employed to characterize *'conduct marked by careless disregard whether or not one has the right so to act.'* The significance of the word 'willfully' as used in § 3 now before us, was carefully considered by the circuit court of appeals for the eighth circuit in St. Louis & S. F. R. Co. v. United States, 169 F. 69. Speaking through Circuit Judge Van Devanter, now Mr. Justice Van Devanter, the court said (page 71): ' "Willfully" means something not expressed by "knowingly," else both would not be used conjunctively. * * * But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition. * * * So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, either *intentionally disregards the statute* or *is plainly indifferent to its requirements.'* That statement has been found a useful guide to the meaning of the word 'willfully' and

to its right application in suits for penalties under section 3. United States v. Stockyards Terminal Ry. Co., supra, 8 Cir., 178 F. 19, 23. St. Joseph Stockyards Co. v. United States, supra, 8 Cir., 187 F. 104, 105. Oregon-Washington R. & Nav. Co. v. United States, 9 Cir., 205 F. 337, 339. St. Louis Merchants' Bridge Terminal Ry. Co. v. United States, 7 Cir., 209 F. 600. See, also, Chicago, B. & Q. R. Co. v. United States, 8 Cir., 194 F. 342, 346; United States v. Kansas City Southern Ry. Co., 8 Cir., 202 F. 828, 833. [Emphasis added.]

There was evidence before the District Court that appellees did not act with "careless disregard," that they did not intentionally disregard the statute, and that they were not "plainly indifferent to its requirements." Although appellees were eager to ship their fruit in order to avoid substantial financial loss, it is clear that they did not ship one orange in excess of their allowance until they had received the assurance of a reputable attorney that they could ship under the immunity which he informed them was provided by § 8c(14). His advice was based on the only court decisions which had construed this section and was in accord with these decisions. Lo Bue Brothers accepted and believed this advice and information, and there is substantial evidence to support the finding that they acted in good faith in reliance thereon in filing the petition and making the shipments. Far from being heedless or indifferent to the requirements of the law, they were diligent in seeking to observe them, and exercised reasonable care and caution to avoid a violation.

The District Court saw and heard the witnesses, including the attorney upon whose advice the appellees acted. He was in the position of determining the sincerity of the attorney who gave the advice and the good faith of appellees in relying upon this advice.

Based upon the evidence he heard he found and concluded that the appellees did not willfully exceed their allotment.

To set aside this finding, we would be required to hold that the finding of the District Court was clearly erroneous; in effect we would be required to hold that the evidence heard by the District Court required a contrary finding. This we cannot do.

The judgment is affirmed.